**DONALD M. GINDY** (SBN# 45228)
E-Mail: don@gindylaw.com
Law Offices of Donald M. Gindy
1925 Century Park East, Suite 650
Los Angeles CA, 90067
Telephone: (424) 284-3123

Attorney for Plaintiff,
VBCONVERSIONS LLC

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VBCONVERSIONS LLC, A California Limited Liability Company<br><br>Plaintiff,<br><br>v.<br><br>BLUE SWITCH.COM INC., a New York corporation; MARK NAKACH, an individual; JOE SHOMER, an individual; DOES 1-10, inclusive;<br><br>Defendants. | Case No: 15-cv-09372 PA(PLAx)<br>[*Assigned to the Hon. Percy Anderson*]<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>**1. COPYRIGHT INFRINGEMENT;**<br>**2. CONTRIBUTORY COPYRIGHT INFRINGEMENT;**<br>**3. VICARIOUS COPYRIGHT INFRINGEMENT;**<br>**4. VIOLATION OF THE DIGITAL MILLENNIUM COPYRIGHT ACT, § 1201(a);**<br>**5. VIOLATION OF CALIFORNIA'S COMPREHENSIVE DATA ACCESS AND FRAUD ACT, AT PENAL CODE SECTION 502(e).**<br>**6. REQUEST FOR INJUNCTIVE RELIEF**<br><br>*Demand for jury trial* |

Plaintiff, VBConversions LLC, a California limited liability company, hereby alleges that defendants Blue Switch.com Inc., Mark Nakach and Joe Shomer, are liable to it for copyright infringement, contributory and vicarious infringement, violation of the Digital Millennium Copyright Act, at §1201(a)(1)(A), violation of the California Comprehensive Data Access and Fraud Act, at Penal Code §502(e), in connection with the plaintiff's copyrighted software entitled *VB.Net to C# Converter.* This action is based upon a federal question.

### A. SUMMARY OF THE ACTION.

This action seeks damages and injunctive relief upon defendants' unauthorized access, copying, and adaptation of plaintiff's copyrighted software entitled "VB.NET to C# Converter."(hereinafter the "Program") (C# is pronounced C Sharp).

### B. JURISDICTION.

1. This action arises under the Copyright Act of the United States, 17 U.S.C. §101 and §501, et seq and the Digital Millennium Copyright Act, 17 U.S.C. §1201(a)(1)(A). This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1338(a) and 28 U.S.C. §1367(a). Jurisdiction is further founded upon the defendants' affirmation of a provision in a licensing agreement that the parties agree to subject themselves to the personal jurisdiction of the courts of the State of California.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2) & §1400(a). Plaintiff further alleges venue is proper as the result of a Forum Selection Clause in a license agreement affirmed by defendants designating the County of Los Angeles, State of California, as the appropriate location for hearing in the event of a dispute arising out the license.

C. **PARTIES**

3. VBConversions LLC (hereinafter "VBC") is a California limited liability company, whose principal office is located in Santa Monica, California. VBC engages in the licensing of its software product, (hereinafter "the Program"), to the public on the Internet.

4. Plaintiff is informed and believes and thereon alleges that Blue Switch.com Inc. (hereinafter "BLU"),is a New York corporation, with its principal headquarters located at 61 Broadway, Suite 2710, New York, New York 10006. Upon information and belief, plaintiff alleges that BLU is engaged in business as a software development firm.

5. Plaintiff is informed and believes and thereon alleges that at all relevant times Mark Nakach, an individual, was employed as a software developer/computer programmer by BLU.

6. Plaintiff is informed and believes and thereon alleges that at all relevant times Joe Shomer was the Director of Information Technology and supervisor of fellow employee, Mark Nakach, at BLU.

D.  **GENERAL ALLEGATIONS.**

7.  Plaintiff has registered its programs with the Register of Copyrights. Registration number for Version 3.11 issued to VBC is TX0008144516, effective April 22, 2015. Registration number for Version 3.12 issued by the Register of Copyrights is TX 008145113, effective November 3, 2015. True and correct copies of the registrations taken from the website of The Copyright Office are attached hereto and incorporated by reference collectively as **Exhibit** "**A**."

8.  VBC licenses its copyrighted program online at vbconversions.com. VBC subscribes to the marketing practice of offering its program in a trial version for a *limited time* and with *reduced conversion limits* to potential purchasers. In this instance, it is offered for 15 days. A party is permitted to try out the program and see if it is suitable for their needs. Users are provided with up to 2,000 lines of Visual Basic programming to convert to C#. If they find the program appropriate for their needs they may apply for a license by paying the standard market fee. However, prior to being permitted to use the Trial version, a prospective purchaser must first affirm an End User Licensing Agreement ("EULA"). No registration key is issued to trial users, unless and until they purchase a license. Otherwise, the trial version of the program will automatically disable after 15 days. A copy of the EULA is attached hereto as **Exhibit "B."** The only ways in which the Program continues on beyond the fifteenth day is owing to purchase of a license during the trial period; use of an illegally generated registration key that unlocks the Program

4
SECOND AMENDED COMPLAINT

during the trial period without the knowledge or consent of VBC; or, reverse engineering, decompiling or disassembling the Program.

10. The licensee, whether trial user or purchaser, is advised that the terms and conditions of the license make it "…revocable, limited, non-transferable and a non-exclusive license to use the Software Products." "A license for the Software Product may not be shared." Id., at ¶1.

11. Most importantly, the licensee is also advised that "You may not rent, lease, lend or provide conversion services to third parties with the Software Product." Id., at ¶2.

12. In business programming, Visual Basic (VB) has one of the largest user bases and is probably the most popular programming language. But many developers look to more recent computer languages in order to enhance what they do and to eliminate flaws found in earlier programs such as VB. Newer languages used by programmers include C, C+ and C++. C# has evolved from these earlier attempts at improving VB.

13. C# is intended to be a simple, modern, general-purpose, programming language. The language is intended for use in developing software components suitable for deployment in many different environments. For instance, C# compilers exist for just about every platform imaginable, including Mac, Linux, Windows, Solaris, etc. C# is suitable for writing applications for both hosted and embedded systems, ranging from the very large that use sophisticated operating

5
SECOND AMENDED COMPLAINT

systems, down to the very small having dedicated functions.

14. Plaintiff is informed and believes that at all times mentioned herein defendants, and each of them, have engaged in and continue to engage in the purchase and/or sale of goods and services within the County of Los Angeles and/or within the parameters of the Central District of California.

15. The American Registry of Internet Numbers (ARIN) is a non-profit organization that is charged with the task of assigning internet protocol addresses to computers using the Internet. It is one of five organizations around the globe charged with these duties. The geographic area assigned to ARIN is North America. ARIN provides information as to the Net Range of Computers, by IP address, owned and/or operated by parties within the above geographical region.

16. Plaintiff is unaware of the names and true capacities of Defendants, whether individual, corporate and/or partnership entities, Named herein as DOES 1 through 10, inclusive, and therefore sues them by their fictitious names. Plaintiff will seek leave to amend this complaint when their true names and capacities are ascertained. Plaintiff is informed and believes and thereon alleges that all of the defendants, known and unknown, are in some manner responsible for the wrongs alleged herein and that at all times mentioned herein were the agents and servants or joint venturers/ partners-in-concert of the other Defendants, and acted within the course and scope of said agency and employment or within the parameter of their agreement.

17. Plaintiff is informed and believes and thereon alleges that at all times relevant hereto, the named Defendants and DOES 1-10, inclusive, knew or reasonably should have known of the acts and behavior alleged herein and the damages caused thereby, and by their inaction ratified and encouraged such acts and behavior. Plaintiff further alleges that said defendants have a non-delegable duty to prevent or cause such acts and behavior described herein, which duty defendants failed and/or refused to perform. Plaintiff further alleges upon information and belief that each act, transaction or event hereinafter stated was directed, hosted, served and routed through a network operated and maintained by defendant BLU.

**FIRST CLAIM FOR RELIEF:** *Violation of 17 U.S.C.§106(1)& 501,et.seq., Copyright Infringement against all defendants.*

18. Plaintiff incorporates by reference paragraphs 1 through 17 as if the same were set forth fully herein. [In the following recitation of times, the VBConversions server is recording in Central Standard Time, while the user is Eastern Standard Time.]

19. On November 3, 2015, at 10:09 a.m., EST, defendant Nakach affirmed the VBC EULA.

20. On the same date, at 10:47 a.m., CST, without obtaining a license from VBC, Nakach illegally caused the Program, at Version 3.12, to convert Visual Basic programming into 99,893 lines of C#. At 11:28 p.m., Nakach converted once

7
SECOND AMENDED COMPLAINT

again by having Visual Basic programming become 99,901 lines of C# by reason of his wrongful use of plaintiff's Program.

21. On Wednesday, November 4, 2015, at 9:43 a.m., CST, Nakach again converted VB to 99,901 lines of C# by reason of his use of the Program. At 2:29 p.m., he converted to 94,388 lines of C#; at 2:43 p.m., he converted VB to 94,389 lines of C#; at 2:59 p.m., he converted VB to 8,963 of C#; at 3:02 p.m., he again converted to 8,963 lines of C#; at 3:03 p.m., he converted VB to 8,951 lines of C#; at 3:05 p.m., he converted VB to 8,819 lines of C#; at 3:13, 3:14 and 3:18 p.m., he converted a total of 26,457 lines to C#.

22. On Friday, November 6, 2015, at 9:06 a.m. and 9:27 a.m., he wrongfully converted from VB to C# 188,460 lines of programming.

23. On Thursday, November 19, 2015, at 10:51, 10:52 and 10:53 a.m., Nakach illegally converted from VB 26,457 lines of C#.

24. On Wednesday, November 25, 2015, at 2:08, 2:21, 2:50 and 2:53 p.m., Nakach continued converting and produced 35,278 more illegally created C# lines.

25. On Thursday, December 1, 2015, at 9:48 a.m., one final conversion of 8,819 lines was created.

26. The total of all lines converted by reason of Nakach's illegal use of the Program amounts to 809,639 lines of C#. A copy of the "Proofs" attesting to the date and time of infringement is attached hereto and incorporated by reference as **Exhibit "C."**

27. The name of the computing device used to accomplish the above acts of infringement is "BS-MARKN2." The username of the individual performing the acts is noted as "markn."

28. The Public Internet Protocol address of the computer is noted to be: 216.52.89.4; the Private Internet Protocol address, indicating presence on a network, is 10.10.3.28. The American Registry of Internet Numbers (ARIN) indicates that the Public IP address has been assigned to Blueswitch. A copy of the ARIN report is attached hereto and incorporated by reference as **Exhibit "D."**

29. The "domain" or workgroup is entitled "BlueswitchNY.com." The VB project to which all of the converting was dedicated is called "Bluebasis." Finally, the email address to which each of the lines of conversion were directed is markn@blueswitch.com.

30. On Wednesday, November 25, 2015, at 3:36 p.m. Mark Nakach contacted David A. Crook, managing member of VBConversions by email. Nakach indicated that he was having some difficulty with the Program. In particular, he indicated he was experiencing a "Conversion Error – Type Constraints." He went on and described the issue. Mr. Crook replied on November 25, 2015, at 7:26 p.m., stating "Hi Mark, Thanks, I'll look into this. By the way, are you a customer? I didn't see any records of BlueSwitch ordering. Thanks, Dave." Nakach replied on November 25, 2015, at 8:31 p.m., "Thanks! We aren't current customers, but we have many clients we're thinking of migrating from VB.NET to C# - so were trying

it out and it it (sic) works out we will buy a copy  Mark Nakach BlueSwitch <u>212.742.2770</u>"  A copy of the three emails are attached hereto and incorporated by reference as **Exhibit "E."**

31.  Accordingly, Nakach admits that neither he, nor BlueSwitch has purchased a license.  His admission also acknowledges that his reproduction, adaptation and dissemination of the Program to the public is unlawful and a violation of the Copyright Act at 17 U.S.C. §§§106(1)(2)&(3).  He also has admitted violation of the EULA by sharing it, using it for conversion services to third parties.  Since Nakach obtained access without a legitimate registration key by disassembling the Program and reverse engineering it, he has also violated another section of the EULA.  Finally, Nakach on behalf of his employer, BLU, has violated the Digital Millennium Copyright Act, at §1201(a)(1)(A), by circumventing a technical measure, a 25 digit alphanumeric code put in place by VBC to prevent unauthorized access, on 18 separate occasions. In this case, by reverse engineering and decompiling the Program, Nakach has avoided and bypassed legitimate entry by purchase of a registered license.  See 17 U.S.C. §1201(a)(3)(A).

32.  As stated, the total of all lines illegally converted to C# amounts to 806,639. If the same number of lines of C# were magically converted to text, it would be roughly equivalent to .035% of the total or 28,315 pages of textual material.  If the average book is 200 pages in length, it would be the equivalent of

10
SECOND AMENDED COMPLAINT

141 books. This would make a rather complete library. Importantly, these are converted lines of code. An alternative evaluation would say there are 28 lines to the average page. Divide 806, by 28 equals 28,808 pages of text or approximately the same as the preceding estimate. In any case, this is an astonishing amount of copying which undoubtedly assisted BLU in its business practices.

33. In all instances, the converting was willful and deliberate subjecting defendants to the maximum allowed for Statutory Damages of $150,000.00. BLU might also be liable for Actual Damages according to proof at time of trial.

**SECOND CLAIM FOR RELIEF:** *Contributory Copyright Infringement.*

34. Plaintiff incorporates by reference paragraphs 1 through 33, as if the same were set forth fully herein.

35. By virtue of his position as a software developer and designer, Nakach knew or had reason to know that he was violating the rights of the copyright holder, VBConversions. Likewise, the Director of Information Technology knew or had reason to know of the illegal acts that Nakach was engaged in and, yet, permitted the latter to continue his wrongful activity. By so doing, Mr. Shomer contributed and materially assisted in the infringement. Alternatively, he turned a blind eye to Nakach's wrongful access and copying of plaintiff's program. single seat license he obtained was not transferable.

36. Defendants, and each of them, are jointly and severally liable to Plaintiff in Actual Damages of a sum unknown at this time, but for all profits

11
SECOND AMENDED COMPLAINT

attributable to the infringements, according to proof at time of trial. In the alternative, defendants are jointly and severally liable for Statutory Damages of $150,000.00, as and for the willful and intentional infringement and unauthorized access, copying and usage of plaintiff's copyrighted programs.

**THIRD CLAIM FOR RELIEF:** *Vicarious Copyright Infringement*

37. Plaintiff incorporates by reference paragraphs 1 through 36, inclusive, as if the same were set forth fully herein.

38. Plaintiff is informed and believes and thereon alleges that at all times relevant to the actions complained of herein the employer, BLU, had the right and ability to oversee, govern, control and direct its employees actions over its computer system, including, but not limited to, halting any adverse conduct in which its employee is engaged, such as preventing the illegal conversion of Visual Basic programming to C# by its employee, Nakach. Yet, despite its awareness, BLU failed to discharge its duties as employer which has led to the number of lines wrongfully converted to C#.

39. Plaintiff further alleges that as a proximate result of defendants' conduct, defendants have profited in an amount and in a manner that would not have taken place, but for the purloining of plaintiff's copyrighted software by its employees. Accordingly, defendants' have gained a direct financial benefit to which they are not entitled.

40. Under the circumstances outlined above, defendants,' and each of

them, are liable to plaintiff for Statutory Damages as willful vicarious copyright infringers in the amount of $150,000.00. Defendants' are also liable for Actual Damages in an amount unknown at this time, but according to proof at time of trial.

**FOURTH CLAIM FOR RELIEF:** *Violation of the Digital Millennium Copyright Act, §1201(a)(1)(A).*

41.  Plaintiff incorporates by reference paragraphs 1 through 40, inclusive, as if the same were set forth fully herein.

42.  At all times mentioned herein, VBC had in force a confidential 25 digit alphanumeric code designed to control access to his copyrighted software. It is only when a legitimate purchaser affirms the terms and conditions of the End User Licensing Agreement and pays the standard market fee that unlimited access to the licensed product is permitted. When adherence is satisfied plaintiff will issue to the licensee a non-exclusive, non-transferable license and provide legitimate code enabling unlimited access to the copyrighted program.

43.  Nakach has frankly admitted that neither he, nor BLU has ever purchased a license and thus each occurrence of access is unauthorized.

44.  The code is intended as a technological measure for the purpose of protecting VBC's proprietary program. To gain access requires knowledge of the 25 digits issued by plaintiff. It is intended to exclude those who seek to circumvent the code and gain unauthorized access.

45.  Defendants' did not obtain a license, nor did they use an unauthorized

registration key to gain access to the Program. In fact, defendants' disassembled and reverse engineered a module of the software enabling them to gain unauthorized access to the Program. In so doing, they clearly violated the EULA at ¶ 2, entitled "Limitations on Reverse Engineering, Decompiling and Disassembly." It is stated therein: "*You may not reverse engineer, decompile or disassemble, modify or create derivative works of the Software Product, except and only to the extent that such activity is expressly permitted by applicable law notwithstanding this limitation.*" Moreover, defendants' violated the EULA at ¶ 14, making any copy of the Program obtained by such activity an illegal copy. By affirming the EULA, Defendants' acknowledge and agree they are liable to plaintiff for actual and statutory damages, attorney's fees, lost profits, diminution of value of the software, lost license fees, and all other costs and expenses incurred.

46. The final number of acts of circumvention is unknown at this time, but plaintiff is informed and believes and thereon alleges that at least 23 occasions recited above occurred.

47. As a consequence of defendants' unlawful and unauthorized circumvention of plaintiff's measures, plaintiff has sustained damages as previously set forth herein.

48. The use of the circumvention device to gain access is an intentional and knowledgeable act by the defendants. It is therefore willful and subjects defendants jointly and severally liable for the maximum allowed for Statutory

Damages per act of circumvention or $2,500.00 on 23 occasions for a total of $57,500.00. Alternatively, Plaintiff is entitled to Actual Damages for profits attributable to the acts of circumvention per 17 U.S.C. § 1203(c)(2), according to proof at time of trial.

## FIFTH CLAIM FOR RELIEF: *California's Comprehensive Data Access and Fraud Act, Penal Code Section 502(e).*

49. Plaintiff incorporates by reference paragraphs 1 through 48, as if the same were set forth fully herein.

50. Nakach knowingly accessed and without permission used data, a computer system and a computer network in order to execute a scheme to defraud and deceive and wrongfully to obtain VBC's data as found in its program entitled VB.NET to C# Converter and thus was in violation of Penal Code §502(c)(1).

51. Defendant Nakach knowingly accessed and without permission made and reproduced copies of data from the VBC computer system and all supporting documentation existing on the VBC system in violation of California Penal Code §502(c)(2).

52. Nakach knew or had reason to know he was violating the exclusive rights of VBC to reproduce the Program known as VB.NET to C# Converter, Versions 3.11 and 3.12 onto his computer known as BS-MARKN2. His actions were motivated by malice, oppression and/or fraud subjecting defendants to

compensatory damages and punitive or exemplary damages in an amount unknown at this time, but according to proof at time of trial.

**WHEREFORE**, plaintiff prays that the Court issue the following:

A.    Defendant be enjoined during the pendency of this action and permanently thereafter from appropriating, using or otherwise benefitting from plaintiff's copyrighted application software identified above without the express written approval of plaintiff or its delegate;

B.    Defendants be ordered to identify, preserve, set aside and retain any and all source code and executable files used by them in the in the infringement alleged above pursuant to Federal Rule of Civil Procedure 34, which includes, but is not limited to:(i) all electronically stored information which contains any portion of plaintiff's copyrighted program; (ii) all writings as defined in Federal Rule of Evidence 1001, which refer to or mention in any manner plaintiff's program, except to those items based on privilege.

C.    Pay plaintiff all damages sustained by him as the result of their unlawful acts, with prejudgment interest, as well as account for and pay for all gains and profits they have enjoyed at plaintiff's expense. In particular, Plaintiff demands compensation of at least $150,000.00 as and for Statutory Damages under the Copyright Act or Actual Damages for profits attributable to the infringement, both direct and indirect, according to law.

D.  Plaintiff demands at least $57,500.00 for violation of the applicable sections of the Digital Millennium Copyright Act, §1201(a), et seq., over and above those damages recited under the Copyright Act of 1976;

E.  Trial by jury.

F.  All costs of litigation, costs of suit, reasonable attorney fees and interest accrued at legal rates.

G.  Such other and further relief as the Court deems just under the circumstances.

DATED: February 5, 2016          **LAW OFFICES OF DONALD M. GINDY**

By: /s/ Donald M. Gindy
Donald M. Gindy
Attorney for Plaintiff
VBConversions LLC

**DEMAND FOR TRIAL BY JURY**

PLEASE TAKE NOTICE that Plaintiff VBCONVERSIONS, LLC hereby demands a jury trial in this action.

DATED: February 5, 2016                    L<small>AW</small> O<small>FFICES OF</small> D<small>ONALD</small> M. G<small>INDY</small>

By: _____
Donald M. Gindy
Attorney for Plaintiff
VBConversions LLC