**DONALD M. GINDY (SBN #45228)**
Email: don@gindylaw.com
Law Offices of Donald M. Gindy
1925 Century Park East, Suite 650
Los Angeles, CA  90067
Tel: 424.284.3123

Attorneys for Plaintiff/Cross-Defendants,
VBConversions LLC and David A. Crook

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| VBCONVERSIONS LLC, A California Limited Liability Company, <br><br> Plaintiff, <br><br> vs. <br><br> BLUE SWITCH.COM INC., a New York corporation; MARK NAKACH, an individual; JOE SHOMER, an individual; DOES 1-10, inclusive , <br><br> Defendants. <br> _____ <br><br> BLUE SWITCH.COM INC., a New <br><br> Counterclaimant, <br> v. <br><br> VBCONVERSIONS LLC, a California Limited Liability Company, DAVID A. CROOK, <br><br> Counter-Defendants. | **CASE NO. 15-cv-09372 PA-PLA** <br> *[Assigned to the Hon. Percy Anderson]* <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES OF COUNTER-DEFENDANTS VBCONVERSIONS LLC AND DAVID A. CROOK, IN SUPPORT OF:** <br><br> **1.MOTION TO DISMISS COUNTERCLAIMS FOR LACK OF STANDING –RULE 12(b)(1); 2.FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED – RULE 12(b)(6) AND 3.PRE-EMPTION OF THE COUNTERCLAIMS – 17 U.S.C.§301(a).** <br><br> [Filed concurrently with Memorandum of Points and Authorities, Exhibits, Declarations of David A. Crook and Donald M. Gindy] <br><br> New response date: March 14, 2016 |

1

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT................................2

II.  COUNTERCLAIMANTS' ALLEGATIONS.....................................3

III. PLAINTIFF'S MOTION SHOULD BE GRANTED BECAUSE
     COUNTERCLAIMANTS DO NOT DENY THAT THEY STOLE THE
     SOFTWARE.....................................................................4

IV. APPLICABLE LAW.................................................................7

    a.   Rule 12(b)(1) Standard: Article III Standing Requires Invasion of a
     "Legally Protected" Interest...............................................7

    b.   Rule 12(b)(6) Standard: Failure to State a Claim.................8

V. DISCUSSION OF MERITS OF CLAIMS PURSUANT TO 12(b)(6)
   MOTION TO DISMISS.............................................................9

    a.   General Rule: Nature of UCL: Equity Will Not Assist a Wrongdoer.....9

    b.   Counterclaimants Lack Standing To Bring UCL Claims Because They
     Did Not Purchase the Product..............................................10

VI.  COUNTERCLAIMANTS DO NOT MEET THE REQUIREMENTS FOR
     THE GRANT OF AN INJUNCTION.............................................12

VII. SPECIFIC CLAIMS...............................................................13

    a.   Counterclaimants Lack Standing to Assert a 17500 Claim for
     False Advertising of a Product that they Stole.....................13

    b.   Counterclaimants Lack Standing to Assert a 17200 Claim for
     Unfair Business Practices in Regards to a Product that they
     Stole.............................................................................14

    c.   Fraud..............................................................................14

i

MEMORANDUM OF POINTS AND AUTHORITIES OF COUNTER-DEFENDANTS VBCONVERSIONS LLC
AND DAVID A. CROOK IN SUPPORT MOTION TO DISMISS COUNTERCLAIMS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    d.  Statutory Deceit......................................................................................15

    e.  Counterclaimants' "Bait and Switch" Allegations Are Without Merit; There was no "Switch" in this Case..................................................15

    f.  The Claim For Fraudulent Inducement Is Meritless Because Counterclaimants Cannot Show That They Were Damaged When They Admittedly Stole The Software..................................................16

VIII. COUNTERCLAIMANTS' UCL CLAIMS IS A DISGUISED TORT FOR INTERFERENCE WITH PROSPECTIVE ADVANTAGE AND PREEMPTED BY THE FEDERAL COPYRIGTHT ACT..............................................................................................................16

    A. Legal Standard.

        1. Equivalent Rights......................................................................19

        2. The Subject Matter of Copyright...............................................20

    IX. CONCLUSION............................................................................................21

1

## TABLE OF AUTHORITIES

2   *CASES*                                                                PAGE

3   *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F. 2d 1240, 1249

4   (3rd Cir., 1983)..................................................................................21

5   *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 173 L. Ed. 2d 868 (2009).........................7,9

6   *Asher v. Johnson*, 26 Cal. App. 2d 403, 417 (1938)........................................10

7   *Augustine v. U.S.*, 704 F.2d 1074, 1077 (9th Cir. 1983)...................................8

8   *Baldocchi v. Four Fifty Sutter Corp.* (1933) 129 Cal.App. 383, 393.....................10

9   *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).................8

10  *Bank of Am.*, 202 Cal. App. 3d 38, 60-61, 248 Cal. Rptr. 217 (1988).....................16

11  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 167 L.Ed.2d 929 (2007).......7,8,9

12  *Bruton v. Gerber Prods. Co.* (2013, N.D. Cal.) 961 F Supp. 2d 1062.....................11

13  *City of L.A. v. JPMorgan Chase & Co.* (C.D.Cal. Aug. 5, 2014, No. 2:14-cv-04168-

14  ODW(RZx))......................................................................................8

15  *eBay v. MercExchange, L.L.C.*, 547 U.S. 388, 390 (2006).................................13

16  *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 299 (3d Cir. 1991)......19

17  *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Service, Inc.*, 958 F.2d 896, 904

18  (9th Cir., 1992)..................................................................................18

19  *Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 760..............................10

20  *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F. 3d199

21  (4th Cir., 1997)..................................................................................20

22  *Interscope Records v. Duty*, 2006 U.S. Dist. LEXIS 20214 (D.Ariz, 2006)..............19

23  *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144......9,11,18

24  *Kruse v. [1031] Bank of Am.*, 202 Cal. App. 3d 38, 60-61................................16

25  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011)...........................11,13

26  *Lazar v. Superior Ct.*, 12 Cal. 4th 631(1996)..........................................16

27  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008)......................9

28

iii

*Lee On v. Long*, 37 Cal.2d 499, 500 [1951]................................................................10

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130 (1992)................7

*Luxul Tech., Inc. v. Nectarlux, LLC* (N.D.Cal. 2015) 78 F. Supp. 3d 1156, 1173......10

*Morris v. BMW of N. Am., LLC* (N.D.Cal. Nov. 7, 2007, No. C 07-02827) 2007 U.S. Dist. LEXIS 85513, at *11-12..................................................................................11

*Oracle Am., Inc. v. Google Inc.* (N.D.Cal. Sep. 18, 2015, No. C 10-03561 WHA) 2015 U.S. Dist. LEXIS 126110, at *25.)..................................................................................12

*Phillips v. Prudential Ins. Co. of America,* 714 F.3d 1017, 1019 (7th Cir. 2013).........9

*Reynolds v. Roll* 122 Cal.App.2d 826, 836 (1954)........................................................10

*Robertson v. Dean Witter Reynolds, Inc*., 749 F.2d 530, 533-34 (9th Cir. 1984)........8

*Robinson v. Arthur R. Lindburg, Inc.* (1934) 140 Cal.App. 669, 680........................14

*S.O.S. Inc. v. Payday Inc., 886 F.2[nd] 1081, 1087 (9th Cir., 1989)*................................4

*Southern Union Co. v. Southwest Gas Corp.* (D.Ariz. 2002) 180 F.Supp.2d 1021, 1030-1031..................................................................................................................16

*Tsang v. Kan*, 78 Cal.App.2d 275, 281 (1947)................................................................15

*Walker v. USAA Cas. Ins. Co. (2007, ED Cal)* 474 F Supp. 2d 1168........................12

*Walker v. Geico Gen. Ins. Co. (2009, 9th Cir. Cal.)* 558 F.3d 1025........................12

*Westside Center Associates v. Safeway Stores 23, Inc. (1996) 42 Cal.App.4th 507, 521-522 [49 Cal. Rptr. 2d 793]*..............................................................................18

*White, 227 F.3d at 1242-43*..............................................................................................7

**R**ULES

Federal Rules of Evidence Rule 201................................................................................8

Federal Rules of Evidence Rule 401................................................................................6

Federal Rules of Evidence Rule 403................................................................................6

Fed R. Civ. P. Rule 12(b)(1)...........................................................2,3,6,7,8,10,21

Fed R. Civ. P. Rule 12(b)(6)..............................................................2,3,7,8,9,21

MEMORANDUM OF POINTS AND AUTHORITIES OF COUNTER-DEFENDANTS VBCONVERSIONS LLC
AND DAVID A. CROOK IN SUPPORT MOTION TO DISMISS COUNTERCLAIMS

1

STATUTES

*Cal Civ Code § 3517*.................................................................................10

*Cal. Bus. & Prof. Code §17200*.............................................................14

*Cal. Bus. & Prof. Code §17204*.........................................................11,12

*Cal. Bus. & Prof. Code §17500*........................................................3,5,13

*16 C.F.R. Part 238*................................................................................15

*17 U.S.C §106* .................................................................................19,20

*17 U.S.C. §102*......................................................................................18

*17 U.S.C. §103*......................................................................................18

*17 U.S.C. §301*..................................................................................3,18

*Digital Millennium Copyright Act, §1201(a)(1)*.................................20

OTHER AUTHORITIES

*1 Nimmer, § 1.01[B]*.............................................................................18

MEMORANDUM OF POINTS AND AUTHORITIES OF COUNTER-DEFENDANTS VBCONVERSIONS LLC
AND DAVID A. CROOK IN SUPPORT MOTION TO DISMISS COUNTERCLAIMS

Counterdefendants, VBConversions, LLC ("VBC") and David A. Crook, hereby move the Court to dismiss Counterclaimant's Counterclaims for lack of standing as required by Article III [a Rule (12(b)(1) motion], failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. Proc. 12(b)(6) and preemption.

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

To present an analogous situation, this case depicts the absurd consequence of an individual testing a car he was explicitly permitted to drive only around the block, but instead drives cross-country and then complains the car didn't perform as advertised and sues the owner of the car for its alleged defects.  First, he violated his agreement with the owner, next he abused the trust placed in him and, third, he has no basis to complain.

In the current matter, instead of a car, the product is computer software. Defendant, Mark Nakach, was permitted to use the limited Trial version of the VBC computer program called VB.NET to C Sharp converter.  Instead, he violated the terms and conditions of the licensing agreement he had just affirmed, used the Program to convert 800,000 lines of code for his company (four hundred times the permitted trial use) and now his employer complains that VBC and its managing member violated the Unfair Competition Law, falsely advertised the software and fraudulently induced Nakach to use it.  A more implausible basis for bringing a counterclaim could hardly be imagined!  It's the lawbreaker alleging the victim made him do it.   In these circumstances, Counterclaimant, Blue Switch.com Inc., Nakach's employer, cannot meet its burden of proving that it has a legally protected interest that would give it Standing to Sue.

Plaintiff/Counter-Defendants, VBConversions and David A. Crook, ask the Court to find that the Counterclaimants do not have Standing to Sue under Rule 12(b)(1), because they have not shown that they have suffered an  invasion of a "legally protected interest."  Thus, at the outset, they have no Article III Standing.

In addition to lacking basic standing, Counterclaimants fail to state a claim upon which relief can be granted (12(b)(6)).  Their allegations conflict with their admissions and disclose unlawful conduct by which, in turn, renders their California statutory claims implausible.  Their admission of using the VBC Program in violation of the licensing agreement undermines the allegation of fraudulent inducement; the claim of "bait and switch" is rebutted by the very language of Section 17500 of the Business and Professions Code; and, the actions taken by David A. Crook in promptly attempting to assist Mark Nakach with apparent technology problems and the license agreement provision to replace or refund for defective software negates any thought of deception, unfairness or false advertising.

Finally, Counterclaimants' state law claims are preempted by the arguments in their own pleadings as regards Plaintiff's state law claims.  Their state law claims are merely a disguised claim for interference with prospective business advantage which is pre-empted by the Copyright Act.

Thus dismissal is proper under Rules 12(b)(1) and 12(b)(6) and 17 U.S.C. §301(a).

## II.    COUNTERCLAIMANT'S ALLEGATIONS

There are three counterclaims: false advertising, unfair business practices and fraudulent inducement.  The factual allegations set forth to support the counterclaims are as follows:  (1) after downloading the free trial version of the

MEMORANDUM OF POINTS AND AUHTORITIES OF COUNTER-DEFENDANTS VBCONVERSIONS LLC
AND DAVID A. CROOK IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS

software, reverse engineering  it and using it without permission beyond the free trial parameters, Counterclaimants were not happy with its performance;  (2) they were induced to steal the software through a bait and switch scheme; (3) that their use of the trial version of the software was tracked and found to be infringing and (4) that Plaintiff brings frequent copyright violation claims against infringers.  These claims are, in a word, meritless.  Notably, Counterclaimants do not deny that they stole the software; their claim is that they were induced to do so and that they did not like the product.

## III.   PLAINTIFF'S MOTIONS SHOULD BE GRANTED BECAUSE COUNTERCLAIMANTS DO NOT DENY THAT THEY STOLE THE SOFTWARE

Plaintiff, VBConversions, alleges copyright infringement.  There is no question that Blue Switch employee, Mark Nakach obtained a trial version of plaintiff's copyrighted program which he used far beyond the scope of the permitted trial and that it was done within the scope of employment. Counterclaimants concede in their Answer that Nakach did not have a license to use the software to the extent and in the manner that he did in fact use it.[1]

The undisputed facts are as follows:  VBC subscribes to the marketing practice of offering its program in a trial version for a *limited time* and with *reduced conversion limits* to potential purchasers.  In this instance, it is offered for 15 days.

---

[1] Plaintiff contends after entering the VBC trial version, Nakach exceeded authorized access to the program. *cf. S.O.S., Inc. v. Payday, Inc.*, 886 F.2d 1081, 1087 (9th Cir.,1989) by reverse engineering same, decompiling and rebuilding it to eliminate the need to have a legitimate registration key for entry.

A party is permitted to try out the program and see if it is suitable for their needs. Users are provided with up to **2,000 lines** of Visual Basic programming to convert to C# [2,000 lines is approximately 70 pages of text]. If they find the program appropriate for their needs they may apply for a license by paying the standard market fee. However, prior to being permitted to use the Trial version, a prospective purchaser must first affirm an End User Licensing Agreement ("EULA"). No registration key is issued to trial users, unless and until they purchase a license. Otherwise, the trial version of the program will automatically disable at the end of the trial period. A copy of the EULA is attached to the Second Amended Complaint as Exhibit "B."

Nakach downloaded the trial version of VB.NET to C Sharp converter [hereafter "the software"] on November 3, 2015. It is undisputed that Nakach agreed to the terms of the EULA on that date. However, instead of abiding by the limit of 2000 lines of code, it is undisputed that Nakach converted a total of over 800,000 lines of code for his company [which would translate to 28,000 pages of text] --- *four hundred times the permitted use.*

Counterclaimants do not claim that this infringement was accidental for such a claim would be utterly implausible.[2]

Counterclaimants make the bizarre argument that Nakach was induced to gain unauthorized access and usage of the program. They make the unlikely claim that VBC engages in "bait and switch" and rely upon Business & Professions Code 17500 to make their case. The clear language of that statute rebuts their

[2] The trial version of the software is programmed to give warnings as to the number of days left in the trial period ("countdown days").

5

1   contention.  They attempt to say that VBC violated the UCL by citing many past

2   cases that have been brought by the company in order to protect its copyright from

3   hackers, such as Mr. Nakach. The cases bear a similarity in that they were brought

4   replete with data spelling out the time and date of infringement, the false registration

5   keys used, the username of the infringer, the name of the computer used, the host,

6   the public and private internet protocol addresses of the offending computer, and the

7   owner/organization operating the computer and/or employer of the infringer. These

8   cases have been resolved and most, if not all, contain confidentiality clauses

9   precluding disclosure. Counterclaimant cites the self-serving statements of the

10  defendants in those cases to support their claims. These cases are irrelevant to the

11  current matter and subject to Federal Rule of Evidence Rules 401 & 403.  It would

12  require this Court to re-litigate all of these cases to see if there is truth and relevance

13  in the claims. It is no less a trial within a trial.  Finally, there is no fraudulent

14  inducement in that VBC spells out on its website what must be done to accomplish

15  error-free conversion, it provides a Help Desk (which Mr. Nakach used to contact

16  David Crook) and VBC will reimburse or replace faulty software as stated in its

17  license agreement. Of course, since Mr. Nakach never paid anything, he has nothing

18  coming back.

19

20      Accordingly, pursuant to the 12(b)(1) motion, the Counterclaimants have no

21  Article III Standing to present these claims in that they have suffered no invasion of

22  a "legally protected interest."  The burden is on the Counterclaimants to show the

23  invasion of a legally-protected interest.   Furthermore, this issue may be raised at

24  any point during the proceedings as it is basic to jurisdiction.  This court may take

25  judicial notice of any exhibits and perform its own fact-finding mission [discussed

26  further below].

27

28

In addition, pursuant to the 12(b)(6) motion, Counterclaimants fail to state a claim upon which relief can be granted for the reasons presented below including the inability to seek equitable relief by injunction when they are admitted wrongdoers.  [also discussed further below].

Moreover, their claims may also be pre-empted by the Copyright Act in that the subject matter is software and comes within copyright and the rights they seek to protect, reproduction, adaptation and distribution, are equivalent to those found in the Copyright Act.

## IV.   APPLICABLE LAW

a)   Rule 12(b)(1) Standard: Article III Standing Requires Invasion of a "Legally Protected" Interest

The "irreducible constitutional minimum of standing" requires demonstrating: (1) the plaintiff suffered an "injury in fact" — an invasion of **a legally protected interest**  [2] that is concrete and particularized, and actual or imminent; (3) causal connection between that injury and the conduct complained of; and (4) the injury will likely be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130 (1992) [Emphasis added].

Counterclaimants have the burden to prove that there has been an invasion of their legally protected interest. *Id*. at 561.

[I]n terms of Article III standing, the complaint [or Counterclaims] must allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) … with a factual Rule 12(b)(1) attack, a court may look beyond the complaint. See *White*, 227 F.3d at 1242-43 (affirming judicial notice of

7

matters of public record in Rule 12(b)(1) factual attack); see also *Augustine v. U.S.,* 704 F.2d 1074, 1077 (9th Cir. 1983) (holding that a district court is free to hear evidence regarding jurisdiction) (*City of L.A. v. JPMorgan Chase & Co.* (C.D.Cal. Aug. 5, 2014, No. 2:14-cv-04168-ODW(RZx)) 2014 U.S. Dist. LEXIS 108750, at *6.).

The burden is on Counterclaimants to show an invasion of their legally protected interest.  They have not shown this in their illegal use of Plaintiff's product.[3]

Thus Plaintiff's 12(b)(1) motion is properly granted.

b)      Rule 12(b)(6) Standard: Failure to State a Claim

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal when a complaint fails to state a claim upon which relief can be granted. A complaint fails to state a claim if it does not allege facts necessary to support a cognizable legal claim. *See Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 533-34 (9th Cir. 1984)

A motion to dismiss under Rule 12(b)(6) tests whether the complaint contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 167 L.Ed.2d 929 (2007).

---

[3] As regards the 12(b)(1) motion, this Court is empowered to take judicial notice of the pleadings, exhibits to the pleadings, matters of public record, facts not subject to reasonable dispute because they are generally known within the trial court's territorial jurisdiction; or facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. FRE 201.

8

"A claim has plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged…"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 173 L. Ed. 2d 868 (2009).  A pleader must do more than merely incant labels, conclusions, and the formulaic elements of a cause of action.  *Id.* Factual allegations must be enough to raise a right to relief above the speculative level.  *Twombly*, *supra*, at 555.

Allegations based on information and belief only invite speculation and fail to resolve issues and for that reason they are unacceptable allegations. "Only well-pleaded factual allegations, not its legal conclusions, are accepted as true." *Phillips v. Prudential Ins. Co. of America,* 714 F.3d 1017, 1019 (7th Cir. 2013).  Likewise, the court will not accept as true bald assertions, conclusions or inferences, legal conclusions "couched" or "masquerading" as facts, **or conclusions contradicted by the complaint's own exhibits or other documents of which the court may take proper notice.**  See *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008); *Phillips*, *supra*, at 1020. (emphasis added).

For the reasons discussed below, Counterclaimants fail to state any claim upon which relief can be granted.

## V.    DISCUSSION OF MERITS OF CLAIMS PURSUANT TO 12(b)(6) MOTION TO DISMISS

### a)    General Rule: Nature of UCL: Equity Will Not Assist a Wrongdoer

Although the UCL targets a wide range of misconduct, its remedies are limited because UCL actions are equitable in nature. (*Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144.  Damages cannot be recovered, and plaintiffs are generally limited to injunctive relief and restitution. (*Ibid*.)

9

Equity will not assist wrongdoers such as the Counterclaimants in the current case. *See Baldocchi v. Four Fifty Sutter Corp.* (1933) 129 Cal.App. 383, 393 ["equity will not balance the inconvenience of a tortious wrongdoer"]; *Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 760 [Dissent ]: [I]t is a first principle of equity that a wrongdoer should not be permitted to profit from its wrongs].

As a general rule, even outside the context of equity, it is a "settled principle that the courts will not lend assistance to persons whose claim for relief rests on an illegal transaction." *Lee On v. Long*, 37 Cal.2d 499, 500 [1951] [even if Plaintiff had a statutory right to recover funds, the court would not help it because the funds were acquired illegally].

*Asher v. Johnson*, 26 Cal. App. 2d 403, 417 [1938]: "If the plaintiff cannot open his case without showing that he has broken the law, the court will not assist him, whatever his claim of justice may be upon the defendant."

*See also Reynolds v. Roll* 122 Cal.App.2d 826, 836 (1954)  [same];  Cal Civ Code § 3517: "No one can take advantage of his own wrong."

b)    Counterclaimants Lack Standing To Bring UCL Claims Because They Did Not Purchase the Product

For the reasons set forth in the discussion supporting the 12(b)(1) motion, Counterclaimants lack standing due to their theft of the software.  Their alleged losses due to what they claim are imperfections in a stolen product do not convey standing.

See *Luxul Tech., Inc. v. Nectarlux, LLC* (N.D.Cal. 2015) 78 F. Supp. 3d 1156, 1173:

In order to have standing to bring a claim under the UCL or FAL, a plaintiff must demonstrate that she "suffered injury in fact and [ ] lost money or property as a result of the unfair competition."

*See* Cal. Bus. & Prof. Code § 17204; *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011).

*See also Korea Supply Co. v. Lockheed Martin Corp. supra* at 1144-1145:

The Court of Appeal in this case held that plaintiff can recover disgorgement of profits earned by defendants as a result of their allegedly unfair practices, even where the money sought to be disgorged was not taken from plaintiff and plaintiff did not have an ownership interest in the money . . . As we explain, the Court of Appeal's reliance on this language was mistaken . . . We defined an order for 'restitution' as one 'compelling a UCL defendant to return money obtained through an unfair business practice to those persons in interest from whom the property was taken, **that is, to persons who had an ownership interest in the property or those claiming through that person**. [Emphasis added].

*Morris v. BMW of N. Am., LLC* (N.D.Cal. Nov. 7, 2007, No. C 07-02827) 2007 U.S. Dist. LEXIS 85513, at *11-12:

Morris merely took advantage of the adjustment program by receiving two free tires under the terms for customers with more than 10,000 but less than 20,000 miles on their vehicles. Thus, Morris does not have standing to sue under Section 17204 and cannot bring a claim under the UCL.

*Bruton v. Gerber Prods. Co.* (2013, N.D. Cal.) 961 F Supp 2d 1062 [Consumer had standing to bring claims under California's Unfair Competition Law, False Advertising Law, and Consumers Legal Remedies Act with respect to baby food labels on products she actually purchased, but not as to products consumer did not

11

allege she had purchased, and websites that she did not allege to have visited or seen].

*Walker v. USAA Cas. Ins. Co. (2007, ED Cal)* 474 F Supp 2d 1168,, *aff'd, Walker v. Geico Gen. Ins. Co. (2009, 9th Cir. Cal.)* 558 F.3d 1025:

> To have standing, plaintiff had to show either **prior possession or a vested legal interest** in the money or property allegedly lost. Because plaintiff could not show either prior possession or a vested legal interest, he had not lost money or property as a result of unfair competition as required by B & P C § 17204. [Emphasis added].

Furthermore, in the copyright context, willful infringers are not looked upon favorably when they attempt to find ways to use the law to evade responsibility:

> In light of the above, this order finds the best statement of the law is that an infringer who has been shown by the copyright owner to have been a willful, conscious, and deliberate plagiarist, in a sense of moral blame, of the copyrighted material may not deduct any income taxes or excess profits taxes from its gross revenues in the calculation of its infringement profits.(*Oracle Am., Inc. v. Google Inc.* (N.D.Cal. Sep. 18, 2015, No. C 10-03561 WHA) 2015 U.S. Dist. LEXIS 126110, at *25.)

Counterclaimants did not lose money or property or suffer injury in fact. They did not purchase the product of which they complain. They had no vested legal interest. They are willful infringers. They stole the software. Thus, they lack standing to bring UCL claims or to otherwise ask this court for assistance.

12

## VI.   COUNTERCLAIMANTS DO NOT MEET THE REQUIREMENTS FOR THE GRANT OF AN INJUNCTION

The factors considered in determining whether to grant a preliminary injunction in this circuit are (1) the likelihood of plaintiff's success on the merits; (2) the possibility of plaintiff's suffering irreparable injury if relief is not granted; (3) the extent to which the balance of hardships favors the respective parties; and (4) in certain cases, whether the public interest will be advanced by the provision of preliminary relief. *eBay v. MercExchange, L.L.C., 547 U.S. 388, 390 (2006)*

Counterclaimants have not discussed nor do they meet these requirements. As discussed at length, their likelihood of success on the merits is weak at best. Their injury is not irreparable.  In fact, it is nonexistent because they did not purchase the product.  The balance of hardships does not favor them because they are admitted wrongdoers [See section V(a)] and finally, there is no issue of public interest in protecting copyright infringers.

Thus injunctive relief is not appropriate.

## VII.   SPECIFIC CLAIMS

a)   <u>Counterclaimants Lack Standing to Assert a 17500 Claim for False Advertising of a Product that they Stole</u>

For the reasons discussed at length above, Counterclaimants lack standing to claim false advertising of a product that they stole.

*See Kwikset Corp. v. Superior Court* 51 Cal.4th 310, 321-322 (2011)

[U]nder the false advertising law, in materially identical language, standing  extends to 'any person who has suffered injury in fact and has lost money or property as a result of a violation of this chapter' (§ 17535). As we shall explain, a party who has lost money or property generally has suffered injury in fact. Consequently, the  plain language

13

of these clauses suggests a simple test: To satisfy the narrower standing requirements imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim.

    b)    <u>Counterclaimants Lack Standing to Assert a 17200 Claim for Unfair Business Practices in Regards to a Product that they Stole</u>

For the reasons discussed at length above, Counterclaimants lack standing to claim unfair business practices as regards a product that they stole.    In addition, Counterclaimants' underlying allegations of  fraud, false advertising and deceit are meritless.

    c)    <u>Fraud</u>

Fraud requires damages.   A party that stole goods cannot claim fraud. *Cf. Robinson v. Arthur R. Lindburg, Inc.* (1934) 140 Cal.App. 669, 680:

> It is well settled that where a party who is induced by fraud and deceit
> to enter into a contract, stands upon the contract and seeks to recover
> damages for the fraud, the correct measure of his damage is the
> difference between the actual value of the property received and the
> value it would have had had the fraudulent representations been true.
> (Citations omitted).  The price paid is some evidence of the value the
> property would have had if the representations made had been true.

The above analysis demonstrates the absurdity of a claim for fraud by a thief.

//

//

14

d)      <u>Statutory Deceit</u>

Statutory deceit under Civil Code section 1710 also requires damages and fails for the same reason. *Tsang v. Kan*, 78 Cal.App.2d 275, 281 (1947):

> It is fundamental, of course, that no matter what the nature of the fraud or deceit, unless detriment has been occasioned thereby, plaintiff has no cause of action.

e)      <u>Counterclaimants' "Bait And Switch" Allegations Are Without Merit; There was no "Switch" in this Case</u>

In addition to the usual standing issues, there is no bait and switch in the current case. The current case concerns one product only, a product that was illegally used by Counterclaimants.  Thus, per 16 C.F.R. Part 238, as quoted by Counterclaimants, bait and switch is inapplicable.

<u>§ 238.0 Bait advertising defined.</u>

> Bait advertising is an alluring but insincere offer to sell a product or service which the advertiser in truth does not intend or want to sell. Its purpose is to switch consumers from buying the advertised merchandise, in order to sell something else, usually at a higher price or on a basis more advantageous to the advertiser. The primary aim of a bait advertisement is to obtain leads as to persons interested in buying merchandise of the type so advertised.

This is not a bait and switch case.  The software product offered by VBC in a trial version is the same product the user can license.  VBC is not switching the trial user to any other product. *Crook Dec.  ¶22.* This is a case of software

1  that was used without a license and of whose merits Counterclaimants now

2  seek to dispute.

3

4         f)     The Claim For Fraudulent Inducement Is Meritless Because
   Counterclaimants Cannot Show That They Were Damaged When They
5             Admittedly Stole The Software

6  There was no "resulting damage" from the alleged fraud because the software was

7  stolen, not legitimately purchased.  *See Southern Union Co. v. Southwest Gas Corp.*

8  (D.Ariz. 2002) 180 F.Supp.2d 1021, 1030-1031:

9

10       'Promissory fraud' is a subspecies of the action for fraud and deceit*."*

11      *Lazar v. Superior Ct.*, 12 Cal. 4th 631(1996). "The elements of fraud,
       which give rise to the tort action for deceit, are (a) misrepresentation

12      (false representation, concealment, or nondisclosure); (b) knowledge of
       falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d)

13      justifiable reliance; and (e) resulting damage." (citations omitted).

14      Southern Union must prove each of these elements to prevail on its
       claim for fraudulent inducement. See Kruse v.  [1031]  Bank of Am.,

15      202 Cal. App. 3d 38, 60-61. Moreover, under California law, Southern

16      Union must prove its damages with "reasonable certainty."

17

18  Thus for the same reasons set forth above, Counterclaimants' Fraudulent

19  Inducement claim must fail.

20

21      **VIII.  COUNTERCLAIMANTS' UCL CLAIMS IS A DISGUISED TORT**

22          **FOR INTERFERENCE WITH PROSPECTIVE ADVANTAGE AND**

23             **PREEMPTED BY THE FEDERAL COPYRIGHT ACT.**

24  The Counterclaimant complains that it "…suffered further financial harm in *delays*

25  *to business projects* caused by Counterclaim defendants' false advertising."

26  CtrClm: ¶32  "This includes expending at least $2,100.00 worth of labor in

27  attempting to remedy problems caused by Counterclaim Defendants' software and

28                  16

*in suffering negative consequences to Counterclaim Plaintiff's business as result of delays to projects* caused by Counterclaim Defendants' unlawful, unfair and/or fraudulent business acts and/or untrue or misleading advertising." ¶41.  It repeats the allegation a third time in ¶51.

Counterclaimant claims that it relied "upon these important representations in downloading and using the Software and in agreeing to any related conditions." ¶45.

Thus, Counterclaim admits it "downloaded" and used the VBC Software. The Software is to be used with an already existing program on the user's computer system. The VBC program, after all, is a translation. Here we allude to mention of the Counterclaimant's program entitled "BlueBasis."  Cmplt: ¶29; Exhibit "C." When Counterclaimant refers "to downloading and using it" [Ctrclm. ¶45.] it means reproducing the VBC Program onto its computer and then adapting it to BlueBasis. The VBC Program is only useful to those who already have an underlying software program of their own.  Once reproduced on the remote computer, it can be used to prepare a derivative work (or adaptation) of the already existing software by converting the underlying Visual Basic programming on BlueBasis to C# programming.  That is what has occurred here.

a)    Legal Standard.

The essence of Counterclaimant's counterclaims is that since the Program failed to function as represented it *interfered with a prospective economic advantage*, i.e., business delays to projects. Id. This is a tort which requires: " '(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic

17

harm to the plaintiff proximately caused by the acts of the defendant.' [Citations.]" ( *Westside Center Associates v. Safeway Stores 23, Inc. (1996) 42 Cal.App.4th 507, 521-522*.  The California Supreme Court has modified the elements in *Korea Supply Co. v. Lockheed Martin,*  29 Cal 4th 1134(2003)."The tort of intentional interference with prospective economic advantage does not require a plaintiff to plead that the defendant acted with the specific intent, or purpose, of disrupting the plaintiff's prospective economic advantage. Instead, to satisfy the intent requirement for this tort, it is sufficient to plead that the defendant knew that the interference was certain or substantially certain to occur as a result of its action. At 1556-57.

Counterclaimant complains that their business projects were delayed. Their relationship with third parties was impeded. Counterdefendants allegedly knew or had reason to know that its false ads and software imperfections would affect users. Ctrclm: ¶¶50, 51. Counterdefendants had reason to know interference was likely to occur. Counterclaimant alleges actual interference and damage. Id. ¶51

"Copyright preemption is both explicit and broad: 17 U.S.C. §301(a) prohibits state-law protection for any right equivalent to those in the Copyright Act." *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Service, Inc.*, 958 F.2d 896, 904 (9th Cir., 1992).

A state law cause of action is preempted by the Copyright Act if two elements are present. First, the rights that a plaintiff asserts under state law must be "rights that are equivalent" to those protected by the Copyright Act. 17 U.S.C. § 301(a); 1 Nimmer, § 1.01[B] at 1-11. Second, the work involved must fall within the "subject matter" of the Copyright Act as set forth in 17 U.S.C. §§ 102 and 103. Id.

*//*

1.   <u>Equivalent Rights.</u>

It appears that the rights Counterclaimant seeks to protect are *equivalent* to those rights found in the Copyright Act.  In effect, Counterclaimant is alleging that Counterdefendants have infringed upon its software program, BlueBasis, by interfering with its *reproduction, adaptation and distribution* rights and its ability to engage in business relations with third parties. To the extent it alleges impeding its relationships, it is actually asserting rights protected by the Copyright Act.

Counterclaimant readily admits "downloading" the VBC program and using it and by its language has reproduced the software on its computer system. Counterclaimant's employee, Nakach, converted the reproduced software (irrespective of alleged complaints) and by virtue thereof, adapted the VBC program. And, finally, it has distributed the BlueBasis program containing the Counterdefendants' software when Mark Nakach placed it on the Blue Switch.com network, i.e., Private Internet Protocol address of 10.10. 3. 128.  *Cmplt.* Exhibit "C." Section 106(3) of the copyright statue grants the copyright owner the exclusive right to distribute copies of the work to the public by sale or other transfer of ownership, or by rental, lease, or lending.

In *Interscope Records v. Duty*, 2006 U.S. Dist. LEXIS 20214 (D.Ariz, 2006), the court held that the mere placement of copyrighted works in a share folder connected to the Kazaa peer-to-peer service constituted a public distribution of those works.  The court related the right of distribution to the right of publication.

In *Ford Motor Co. v. Summit Motor Prod., Inc.*, 930 F.2d 277, 299 (3d Cir. 1991), the concept of "to the public" was further elaborated upon.

"..**even one person** can be the public for the purposes of section 106(3). The term "public" is not defined in the Copyright Act. Thus, we need to look

19

elsewhere for a definition. Our search commences with the observation that the right protected by section 106(3) is generally referred to as that of publication. *See id.* (stating that section 106(3) "establishes the exclusive right of *publication*." (emphasis added)). Indeed, the statutory definition of "publication" is "the distribution of copies . . . of a work to the public by sale or other transfer of ownership," 17 U.S.C. § 101, a definition which tracks the language of section 106(3). "Publication" and the exclusive right protected by section 106(3), then, are for all practical purposes, synonymous. Therefore, any clarification of what is meant by "publication" would also clarify what is meant by section 106(3), and in particular, the term "public." [emphasis added]

In *Hotaling v. Church of Jesus Christ of Latter-Day Saints*, 118 F. 3d199 (4th Cir., 1997), it was held that a library engages in distribution of a copyrighted work when it adds the work to its collections, lists the work in its index or catalog and makes the work available for borrowing or browsing.

In light of these decisions and the admitted conduct of Mr. Nakach and his employer, Blue Switch, they are violators by exceeding the authorized access of the Digital Millennium Copyright Act, §1201(a)(1), that is, circumvention of a technical measure put in place to prevent unauthorized access by reverse engineering and violation of the Copyright Act at 17 U.S.C. §§§ 106 (1) (2) & (3). Interference with prospective economic advantage, by the language of the Counterclaimant **in its own counterclaims** has been demonstrated to be equivalent to the rights protected by the above two laws.

2.    The Subject Matter of Copyright.

When the Counterclaimant speaks of downloading the VBC program, it implicates another existing software program already present on the Counterclaimant's computer system. We speak of the software program called BlueBasis. The latter was in the Visual Basic code and adapted for use of the VBC program, VB.NET to C# Converter.

20

In *Apple Computer, Inc. v. Franklin Computer Corp.*, 714 F. 2d 1240, 1249 (3rd Cir., 1983), it was held that "a computer program, whether in object code or source code, is a "literary work" and is protected from unauthorized copying.  A literary work is protected by the Copyright Act at 17 U.S.C. §102(a)(1).

## IX.   CONCLUSION.

The current Motion is properly granted because Counterclaimants lack Article III Standing to Sue under Rule 12(b)(1).  Their illegal use of Plaintiff's software makes it impossible as a matter of law for them to show that they have suffered an invasion of a "legally protected interest."

In addition to lacking basic standing, Counterclaimants fail to state a claim upon which relief can be granted (12(b)(6)).  Their UCL claims fail because they lack the standing required to pursue such claims since they stole rather than purchasing the software.  Furthermore, Counterclaimants are admitted wrongdoers and their claims for equitable relief must thus fail.

The underlying alleged wrongful acts are also unsupported: the claim of "bait and switch" is nonsensical in that there was no "switch."  Displeasure at the performance of stolen software cannot support fraud or deceit.  Finally, the requirements for injunctive relief are not met.

The Counterclaims are also preempted.  Both equivalent rights and the subject matter of copyright are found to exist in connection with the illegal acts of defendant Nakach and his employer, BlueSwitch, defendant/counterclaimant.  The claims for Unfair Competition, false advertising and fraudulent inducement are really claims for interference with prospective advantage.  As such, it is unmasked as a copyright claim and preempted since the exclusive rights of the Copyright Act are implicated.

21

1   Dated: March 14, 2016

2

3

4   _____

5   Donald M. Gindy
    Attorney for Plaintiff/Counterdefendants
6   VBConversions LLC and David A. Crook

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUHTORITIES OF COUNTER-DEFENDANTS VBCONVERSIONS LLC
AND DAVID A. CROOK IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS