1  BROWNE GEORGE ROSS LLP
   Eric M. George (State Bar No. 166403)
2    egeorge@bgrfirm.com
   Jonathan L. Gottfried (State Bar No. 282301)
3    jgottfried@bgrfirm.com
   2121 Avenue of the Stars, Suite 2400
4  Los Angeles, California 90067
   Telephone: (310) 274-7100
5  Facsimile: (310) 275-5697

6  Attorneys for Defendant/Counterclaimant
   Blue Switch.com Inc. and Defendants
7  Mark Nakach and Joe Shomer

8

9                UNITED STATES DISTRICT COURT

10       CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12  VBCONVERSIONS LLC, a California          Case No. 2:15-CV-09372-PA-PLAX
    Limited Liability Company,               Assigned to the Hon. Percy Anderson
13
                                             **OPPOSITION OF**
14            Plaintiff,                      **COUNTERCLAIMANT BLUE**
                                             **SWITCH.COM INC. TO**
15       vs.                                 **COUNTER-DEFENDANTS**
                                             **VBCONVERSIONS LLC'S AND**
16  BLUE SWITCH.COM INC., a New              **DAVID A. CROOK'S MOTION TO**
    York corporation; MARK NAKACH,           **DISMISS**
17  an individual; JOE SHOMER, an
    individual; DOES 1-10, inclusive,
18                                           Date:    April 18, 2016
              Defendants.                    Time:    1:30 p.m.
19                                           Crtrm:   15
20  _____
    BLUE SWITCH.COM INC., a New              Action Commenced: December 3, 2015
21  York corporation,                        Trial Date: None Set

22            Counterclaimant,

23       vs.

24  VBCONVERSIONS LLC, a California
    Limited Liability Company, DAVID A.
25  CROOK,

26            Counter- Defendants.

27

28

618764.1

OPPOSITION OF BLUE SWITCH.COM INC. TO MOTION TO DISMISS

1

## **TABLE OF CONTENTS**

2

Page

3  I.    INTRODUCTION ...................................................................................1

4  II.   APPLICABLE LAW ON A MOTION TO DISMISS UNDER
5        FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6) ...........3

6  III.  BLUE SWITCH'S ALLEGATIONS IN ITS COUNTERCLAIMS.................3

   IV.   ARGUMENT .........................................................................................6
7
8        A.    VBConversions' Motion Is Based on a Mischaracterization of
                Blue Switch's Counterclaims. ....................................................6

9        B.    The Court Should Not Dismiss Blue Switch's Counterclaims for
10             Lack of Standing Under Fed. R. Civ. P. 12(b)(1). .................7

11       C.    The Court Should Not Dismiss Blue Switch's Counterclaims
                Under Fed. R. Civ. P. 12(b)(6). .................................................9
12
13             1.    VBConversions Has Improperly Moved to Dismiss Blue
                      Switch's Counterclaims Based on a Disputed Issue of
14                    Fact:  Whether Blue Switch Unlawfully Used
                      VBConversions' Software. .............................................9
15
16             2.    The Court Should Not Foreclose Blue Switch's Claim for
                      Injunctive Relief at the Outset of This Case. ............. 12
17
18             3.    Contrary to VBConversions' Argument, the Copyright Act
                      Does Not Preempt Blue Switch's Claim under California's
                      Unfair Competition Law. ............................................. 15
19
   V.    CONCLUSION.................................................................................. 16
20
21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

<u>CASES</u>

*Ang v. Bimbo Bakeries USA, Inc.*,
   13-CV-01196-WHO, 2014 WL 1024182 (N.D. Cal. Mar. 13, 2014) .................9

*Barquis v. Merchants Collection Ass'n*,
   7 Cal.3d 94 (1972) ...........................................................................................14

*CE Resource, Inc. v. Magellan Group, LLC*,
   2:08-CV-02999MCEKJM, 2009 WL 2031721
   (E.D. Cal. July 8, 2009) ..................................................................................16

*Graham v. FEMA*,
   149 F.3d 997 (9th Cir. 1998) .............................................................................3

*Guido v. L'Oreal, USA, Inc.*,
   284 F.R.D. 468 (C.D. Cal. 2012).......................................................................8

*Hewlett v. Squaw Valley Ski Corp.*,
   63 Cal. Rptr. 2d 118 (3d Dist. 1997) ...............................................................13

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)...........................................................................................3

*Morris v. BMW of N.A., LLC*,
   C 07-02827 WHA, 2007 WL 3342612
   (N.D. Cal. Nov. 7, 2007)....................................................................................9

*Rubio v. Capital One Bank*,
   613 F.3d 1195 (9th Cir. 2010) ...........................................................................8

*Sierra Club v. Morton*,
   405 U.S. 727 (1972)...........................................................................................8

*Silicon Image, Inc. v. Analogix Semiconductor, Inc.*,
   C-07-0635 JCS, 2007 WL 1455903
   (N.D. Cal. May 16, 2007) ................................................................................16

*Tyler v. Cuomo*,
   236 F.3d 1124 (9th Cir. 2000) ...........................................................................3

*Usher v. City of Los Angeles*,
   828 F.2d 556 (9th Cir. 1987) ............................................................................2, 3

*Warth v. Seldin*,
   422 U.S. 490 (1975)........................................................................................2, 3

**OTHER AUTHORITIES**

16 C.F.R. Part 238............................................................................................13, 14

Fed. R. Civ. P. 12(b)(1)...............................................................................3, 7, 8, 9

Fed. R. Civ. P. 12(b)(6)...........................................................................................3, 9

1  I.    **INTRODUCTION**

2          VBConversions LLC and David Crook (collectively, "VBConversions") have

3  moved to dismiss the counterclaims of Blue Switch.com Inc. ("Blue Switch") for

4  false advertising, unfair competition and fraudulent inducement.  But

5  VBConversions' motion is based on a straw man:  VBConversions misrepresents

6  Blue Switch's allegations and falsely claims that facts are undisputed.  For example:

7    •    According to VBConversions, Blue Switch does "not deny that they stole the

8          software" belonging to VBConversions. (Memo. at 4:6-7) That is false.  In

9          its Answer to VBConversions' Complaint, Blue Switch denied infringing

10         VBConversions' copyright, misappropriating software, or any other

11         wrongdoing.  (Dkt. No. 37 ¶¶ 31, 45, 51 (denying allegations of wrongdoing

12         in connection with VBConversions' software)).

13   •    According to VBConversions, Blue Switch admits in its counterclaims that it

14         "reverse engineer[ed] it [VBConversions' software] and us[ed] it without

15         permission beyond the free trial parameters." (Memo. at 4:1-2) That is false.

16         There are no such allegations in Blue Switch's counterclaims, and Blue

17         Switch has not otherwise admitted such conduct.

18   •    According to VBConversions, Blue Switch "did not lose money or property"

19         as a result of the conduct alleged in the counterclaims. (Memo. at 12:22-23)

20         That is false.  Blue Switch alleges that, as a result of VBConversions' false

21         representations and malicious software, Blue Switch "expended $2,100-worth

22         of labor in working on problems associated with [VBConversions'] software

23         product not functioning as advertised.  [Blue Switch] suffered further

24         financial harm in delays to business projects caused by" VBConversions'

25         misconduct.  (Countercl. ¶ 32)

26   •    According to VBConversions, it is "undisputed" that "the trial version of the

27         [software] program will automatically disable at the end of the trial period."

28         (Memo. at 4:19, 5:8-9) That is false.  In its Answer, Blue Switch denied this

618764.1

1   allegation. *See* Dkt. No. 37 ¶ 8 ("Defendants deny that 'the trial version of
2   the program will automatically disable after 15 days.'").
3   VBConversions' motion to dismiss for lack of standing and for failure to state a
4   claim ignores or inverts the allegations that it seeks to dismiss, in violation of
5   blackletter law to the contrary. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("For
6   purposes of ruling on a motion to dismiss for want of standing, both the trial and
7   reviewing courts must accept as true all material allegations of the complaint, and
8   must construe the complaint in favor of the complaining party."); *Usher v. City of*
9   *Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987) ("On a motion to dismiss for failure
10  to state a claim, the court must presume all factual allegations of the complaint to be
11  true and draw all reasonable inferences in favor of the nonmoving party." ).
12      Blue Switch's counterclaims tell a very different story than VBConversions'
13  purported summary of them.  And under an accurate portrayal of Blue Switch's
14  allegations, it is clear that none of its three causes of action should be dismissed.
15  According to Blue Switch's counterclaims, VBConversions is running a scam.  Via
16  its website, VBConversions purports to offer users a free download of software to
17  convert computer code from one language (Visual Basic.Net) into another (C#).
18  (Countercl. ¶ 12)  In order to persuade others to use the software, VBConversions
19  makes numerous promises about the capabilities of its software—most of which are
20  lies.  Not surprisingly, very few people (0.5%) purchase the full version of
21  VBConversions' software. *Id.* ¶¶ 12, 14.  But that does not matter to
22  VBConversions because its business model is not based on selling software. *Id.*
23  ¶¶ 16-18.  Instead, VBConversions surreptitiously tracks the users testing its
24  software, and, when it believes that the users have exceeded the terms of the license
25  (*e.g.,* tried to convert too many lines of code or used the software in excess of a
26  timeframe), VBConversions accuses them of copyright infringement and demands
27  five- or six-figure settlements. *Id.* ¶¶ 16-19.  VBConversions could simply
28  deactivate the software after a certain period of time or after a certain number of

1  lines of code have been translated—instead, it waits and watches while users
2  struggle with VBConversions' bug-ridden software and then accuses its victims of
3  "theft" and "hacking."  Since 2009, VBConversions has filed at least twenty-six
4  boilerplate Complaints in this Court.  *Id.* ¶ 22.  Its victims have accused
5  VBConversions of "extortion."  *Id.* ¶ 23.

6       After VBConversions used false representations to convince Blue Switch to
7  download VBConversions' malicious software, Blue Switch incurred thousands of
8  dollars in damages.  *Id.* ¶ 41. VBConversions then sued Blue Switch for copyright
9  infringement, which Blue Switch denied.  (Dkt. Nos. 23 & 37)  In its counterclaims,
10 Blue Switch has asserted claims for fraudulent inducement, false advertising under
11 Cal. Bus. & Prof. Code §§ 17500 *et seq.*, and unfair business practices under Cal.
12 Bus. & Prof. Code §§ 17200 *et seq. Id.* ¶¶ 25-51.

13      The Court should deny VBConversions' motion, which bears no relation to
14 Blue Switch's actual counterclaims or the undisputed facts in this case.

15 **II.   APPLICABLE LAW ON A MOTION TO DISMISS UNDER FEDERAL**
16 **RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)**

17 "For purposes of ruling on a motion to dismiss for want of standing,
both the trial and reviewing courts must accept as true all material
18 allegations of the complaint, and must construe the complaint in favor
of the complaining party." *Graham v. FEMA*, 149 F.3d 997, 1001 (9th
19 Cir. 1998) (quoting *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197,
45 L.Ed.2d 343 (1975)); *see Lujan v. Defenders of Wildlife*, 504 U.S.
20 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (holding that "[a]t
the pleading stage, general factual allegations of injury resulting from
21 the defendant's conduct may suffice" to survive a motion to dismiss).

22 *Tyler v. Cuomo*, 236 F.3d 1124, 1131 (9th Cir. 2000)

23      "On a motion to dismiss for failure to state a claim, the court must presume
24 all factual allegations of the complaint to be true and draw all reasonable inferences
25 in favor of the nonmoving party."  *Usher v. City of Los Angeles*, 828 F.2d 556, 561
26 (9th Cir. 1987).

27 **III.   BLUE SWITCH'S ALLEGATIONS IN ITS COUNTERCLAIMS**
28      Via its website, VBConversions offers a program that purports to convert

software from one computer language (Visual Basic.Net) into another (C#). (Countercl. ¶ 7)  It allows users to download the software for free and to purchase a "full version" for $199.  *Id.* ¶ 12.

Since at least 2015, VBConversions has made detailed representations on its website to the public regarding its software.  These promises include:

- "No C# compiler errors in converted code"
- "Everything Is Supported," including "generic types," "Lambda expressions," "2010-Multiline Lambdas," "2010-Genetic Covariance," "2010-Genetic Contravariance" and "Ling"
- "Casing inconsistencies are identified and fixed"
- Converts "[m]ulti-line lambdas"
- "Identifies code needing attention after conversion"
- "All identifiers are resolved to project code or external assemblies"
- Supports "All Project Types" such as "Web Projects" and "Class Library Projects"

(Countercl. ¶ 8) Based on these representations, many individuals and companies have downloaded VBConversion's software, including Blue Switch, a company that builds websites.  (*Id.* ¶¶ 15, 31)

But VBConversions' representations are false.  In fact:

- Code converted by VBConversions' software contains multiple C# compiler errors.
- The Software does not support "generic types," "Lambda expressions," "2010-Multiline Lambdas," "2010-Genetic Covariance," "2010-Genetic Contravariance" and "Linq."
- Casing inconsistencies (*i.e.*, lower and upper case) are not identified and fixed.  To the contrary, the software introduces casing inconsistencies, resulting in problems to C# code.
- The software does not accurately convert "[m]ulti-line lambdas."

1 • The software fails to "[i]dentify code needing attention after conversion."

2 • All identifiers are not resolved to project code or external assemblies.

3 • The software does not support "All Project Types" and does not support

4    "Web Projects" and "Class Library Projects."

5 (Countercl. ¶ 10)

6        In 2015, Blue Switch spent $2,100 in labor on fixing problems caused by

7 VBConversions' software not working as represented.  In addition, Blue Switch

8 suffered financial harm in delays to business projects caused by VBConversions'

9 false claims.  (Countercl. ¶ 32)

10       VBConversions' false advertising and poorly performing software are not

11 innocent mistakes:  they are knowing misrepresentations designed to defraud others.

12 (Countercl. ¶¶ 43-51)  VBConversions knows that its software does not function as

13 promised.  Prior to Blue Switch's downloading of the software, several companies

14 and individuals had informed VBConversions that its sofware did not work.  *Id.*

15 ¶ 48.  They had complained that the software resulted in "error-ridden output," was

16 "unusable" and was "not functional."  *Id.* ¶ 15.  As a result, very few people who

17 download VBConversions' software proceeded to purchase a full version.  Since

18 January 2009, only 0.5% of users purchased a long-term license, which costs $199.

19 *Id.* ¶¶ 12, 14.

20       VBConversions' business model is not, however, based on selling software

21 that works as advertised.  Instead, VBConversions lures individuals and companies,

22 such as Blue Switch, with false advertising to download the software on a short-term

23 basis.  (Countercl. ¶ 18)  Once the software is downloaded, VBConversions then

24 secretly tracks how many lines of code a user is converting with the software and

25 how many days the software is being used.  *Id.*  If a user exceeds the limits that

26 VBConversions claims are proper (converting more than 2,000 lines or using the

27

28

618764.1

OPPOSITION OF BLUE SWITCH.COM INC. TO MOTION TO DISMISS

1    software for more than fourteen or fifteen days), then VBConversions demands

2    money for copyright infringement.[1] *Id.* VBConversions has filed at least twenty-six

3    boilerplate Complaints in this district for copyright infringement since 2009.

4    *Id.* ¶ 22. Customers have described VBConversions' business practices as

5    "extortion;" others have revealed that VBConversions offers its "customers" a

6    choice: pay tens of thousands of dollars for its dysfunctional program or face a

7    costly lawsuit; and yet others have characterized VBConversions' conduct as

8    "against public policy and contrary to the purpose and statutory language of the

9    Copyright Act." *Id.* ¶ 23.

10      Blue Switch alleges that this dishonest conduct constitutes false advertising in

11    violation of California Business & Professions Code Section 17500 *et seq.*, Unfair

12    Business Practices in violation of California Business and Professions Code Section

13    17200 *et seq.*, and fraudulent inducement. (Countercl. ¶¶ 25-51)

14    **IV.    ARGUMENT**

15      **A.    VBConversions' Motion Is Based on a Mischaracterization of Blue**

16         **Switch's Counterclaims.**

17      VBConversions devotes one paragraph to summarizing Blue Switch's

18    counterclaims. (Memo. at 3:24-4:8) According to VBConversions, "[t]he factual

19    allegations set forth to support the counterclaims are as follows: (1) after

20    downloading the free trial version of the software, reverse engineering it and using it

21    without permission beyond the free trial parameters, Counterclaimants were not

22    happy with its performance; (2) they were induced to steal the software through a

23    bait and switch scheme…." This is a false summary of Blue Switch's

24

---

25   [1] In its motion to dismiss, VBConversions claims that "instead of abiding by the

     limit of 2000 lines of code, it is undisputed that Nakach [an employee of Blue

26   Switch] converted a total of over 800,000 lines of code for his company….—four

27   hundred times the permitted use." (Memo. at 5:13-17) VBConversions fails to cite

     any support for its claim that this issue is "undisputed"—there is none.

28

1  counterclaims, and it is notable that VBConversions does not cite any paragraph of

2  the counterclaims to support its summary.  Contrary to VBConversions'

3  misrepresentations:

4  •     Blue Switch does not allege that it "reverse engineer[ed]" any software.

5  •     Blue Switch does not allege that it "us[ed] it [the software] without

6        permission beyond the free trial parameters."

7  •     Blue Switch does not allege that it was "induced to steal the software."   Blue

8        Switch does not allege that it stole any software.

9  There is nothing in Blue Switch's allegations that supports VBConversions'

10  assertions; and it is ironic that VBConversions falsely represents the counterclaims

11  against it for false advertising.

12         Moreover, VBConversions falsely indicates that certain issues are undisputed.

13  For example, VBConverstions claims that the following is "undisputed:"  "the trial

14  version of the program will automatically disable at the end of the trial period….In

15  this instance, it is offered for 15 days."  (Memo. at 4:19-21; 5:8-9)  VBConversions

16  neglects to mention that, in its Answer, Blue Switch denied this allegation.  *See* Dkt.

17  No. 37 ¶ 8 ("Defendants deny that 'the trial version of the program will

18  automatically disable after 15 days.'").

19         VBConversions' motion is based on demonstrably false representations to the

20  Court.  It mischaracterizes Blue Switch's counterclaims, and it presents disputed

21  issues as undisputed.  These mischaracterizations infect each of VBConversions'

22  arguments.

23      **B.**     **The Court Should Not Dismiss Blue Switch's Counterclaims for**

24          **Lack of Standing Under Fed. R. Civ. P. 12(b)(1).**

25         Throughout its motion, VBConversions argues that Blue Switch lacks

26  standing to assert its claims because Blue Switch does not allege any injury as a

27  result of VBConversions' misconduct.  (Memo. at 7:14-8:9; 10:18-12:25).

28  VBConversions claims that Blue Switch "did not lose money or property or suffer

618764.1

1    injury in fact." (Memo. at 12:22)  That is wrong.  Again, VBConversions is

2    mischaracterizing the counterclaims that it seeks to dismiss.

3           In fact, Blue Switch alleges the following:

4           As a result of [VBConversions'] conduct, [Blue Switch] has been
             damaged.  This includes expending at least $2,100-worth of labor in
5           attempting to remedy problems caused by [VBConversions'] software
             and in suffering negative consequences to [Blue Switch's] business as a
6           result of delays to projects caused by VBConversions....

7    (Countercl. ¶ 41 (counterclaim under California's Unfair Competition Law)) *See*

8    *also id*. ¶ 32 (same with respect to counterclaim under California's False

9    Advertising Law), ¶ 51 (same with respect to counterclaim for fraudulent

10   inducement).[2]  To the extent that the Court looks beyond the pleadings in the

11   context of a motion to dismiss under Fed. R. Civ. P. 12(b)(1) based on standing,

12   Blue Switch has attached a declaration from its Chief Technology Officer

13   supporting these allegations regarding damages.  *See* Decl. of A. Paskie.

14          Blue Switch's allegations of a specific financial loss satisfy the injury-in-fact

15   requirement for standing.  *See Sierra Club v. Morton*, 405 U.S. 727, 733-34 (1972)

16   ("[P]alpable economic injuries have long been recognized as sufficient to lay the

17   basis for standing...."); *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir.

18   2010) (holding that  an individual who alleged that she had incurred a loss of credit

19   or a higher interest rate as a result of the defendant's conduct satisfied the injury-in-

20   fact requirement in a lawsuit involving California's Unfair Competition Law);

21   *Guido v. L'Oreal, USA, Inc*., 284 F.R.D. 468, 475 (C.D. Cal. 2012)  ("Economic

22   injury is cognizable under the UCL [Unfair Competition Law] and sufficient to

23   satisfy Article III standing, so long as the plaintiff lost money or property as a result

24   of the unfair competition and demonstrates a causal connection between the UCL

25   _____

26   [2] VBConversions suggest that Blue Switch does not have a "prior possession or a
     vested legal interest" in its own money that it lost.  (Memo. at 12:3-10)  There is no
27   support for that argument.

28

1  violation and the economic injury." (internal quotation marks omitted)).

2       VBConversions argues that Blue Switch's damages are irrelevant because it

3  was using a free version of the software, instead of the "full version" that costs

4  $199.  (Memo. at 11:16-12:2)  VBConversions suggests that it can make whatever

5  false representations it pleases—and harm others' businesses with malicious

6  software—as long as it does not make a profit in doing so.  None of the cases that

7  VBConversions cites supports it argument.  The allegations in Blue Switch's

8  counterclaims are not similar to *Ang v. Bimbo Bakeries USA, Inc.*, 13-CV-01196-

9  WHO, 2014 WL 1024182, at *8 (N.D. Cal. Mar. 13, 2014) (concluding that class

10  could pursue claims based on unpurchased products that were substantially similar

11  to purchased products).  Blue Switch used the product that is the subject of its

12  claims.  And Blue Switch's allegations are not similar to *Morris v. BMW of N.A.,*

13  *LLC,* C 07-02827 WHA, 2007 WL 3342612, at *4 (N.D. Cal. Nov. 7, 2007) (finding

14  no standing where plaintiff could not identify any money or other concrete injury

15  that he suffered as a result of defendant's conduct).  As discussed above, Blue

16  Switch alleges specific financial harm.

17       Consequently, the Court should deny VBConversions' motion to dismiss

18  under Fed. R. Civ. P. 12(b)(1).

19      C.   **The Court Should Not Dismiss Blue Switch's Counterclaims Under**

20            **Fed. R. Civ. P. 12(b)(6).**

21          1.  **VBConversions Has Improperly Moved to Dismiss Blue**

22              **Switch's Counterclaims Based on a Disputed Issue of Fact:**

23              **Whether Blue Switch Unlawfully Used VBConversions'**

24              **Software.**

25       Several of VBConversions' arguments rest upon the disputed and implausible

26  claim that Blue Switch stole or hacked VBConversions' software.  VBConversions

27  argues that:

28

1   • Blue Switch's claim for fraudulent inducement is meritless: "There was no
2     'resulting damage' from the alleged fraud because the software was stolen,
3     not legitimately purchased." (Memo. at 16:6-7)
4   • Blue Switch's claim for unfair competition should be dismissed because
5     "[e]quity will not assist wrongdoers." (Memo. at 10:1)
6   • Blue Switch's claim for injunctive relief should be dismissed because "they
7     are admitted wrongdoers." (Memo. at 13:13-14)
8   • Blue Switch lacks standing because of its "illegal use of Plaintiff's product"
9     (Memo. at 8:8) *See also id.* at 10:20-23 ("Their alleged losses due to what
10    they claim are imperfections in a stolen product do not convey standing.");
11    13:21-22 ("Counterclaimants lack standing to claim false advertising of a
12    product that they stole."); 14:8-9 ("Counterclaimants lack standing to claim
13    unfair business practices as regards a product that they stole."); 14:14 ("A
14    party that stole goods cannot claim fraud.").

15    But Blue Switch's counterclaims do not assert or admit that Blue Switch stole
16  VBConversions' software. That is plaintiff's allegation in this case, which Blue
17  Switch disputes. *See* Answer ¶ 31 (denying the allegations in paragraph 31 of the
18  Second Amended Complaint that Blue Switch or its employees had committed "a
19  violation of the Copyright Act," had "admitted [a] violation of the EULA [end user
20  license agreement]" or had "violated the Digital Millennium Copyright Act").

21    In its Answer, Blue Switch acknowledges that:

22  • One of its employees "used the [VBConversions] software to attempt to
23    convert code into C#."[3] (Answer (Dkt. No. 37) ¶ 21)

24

25  _____
    [3] The mere fact that Blue Switch used VBConversions' software does not suggest
26  any wrongdoing. In its Complaint, VBConversions acknowledges that it offers its
    software for free to the public "for a limited time and with reduced conversion
27  limits." (Compl. ¶ 9) Blue Switch does not admit that it breached these limits.
28

1    •    This employee "sent an email on November 25, 2015 to VBConversions,

2        stating that he was 'having an issue with the conversion program. I'm trying

3        to convert VB to C#, but the converter doesn't recognize type constraints on

4        generic classes….Any help would be greatly appreciated—Thanks!' (Answer

5        ¶ 30)

6    •    "'Dave' from VBConversions responded on November 25, indicating that he

7        would 'look into this' and inquiring whether 'BlueSwitch' was a customer."

8        (Answer ¶ 30)

9    •    The Blue Switch employee responded on November 25 that "[w]e aren't

10       current customers, but we have many clients we're thinking of migrating from

11       VB.NET to C# -- so we're trying it out and i[f] it works out we will buy a

12       copy.'" (Answer ¶ 30)

13    •    Blue Switch eventually "did not purchase a license for the software of

14       VBConversions. The software did not function as plaintiff claimed it would.

15       It did not convert to usable code." (Answer ¶ 31)

16       In its counterclaims, Blue Switch explains that VBConversions "encourage[d]

17 potential customers to download their software" for free with false representations,

18 and Blue Switch did so. (Countercl. ¶¶ 9, 15)  VBConversions' malicious software

19 resulted in at least $2,100 in damages to Blue Switch. (*Id.* ¶ 32)  VBConversions

20 then sued Blue Switch on the belief that Blue Switch had violated a license. (*Id.*

21 ¶ 18)

22       Nowhere in its Answer or counterclaims does Blue Switch state that it stole or

23 misused software. Nor does Blue Switch admit to breaching a license or to

24 infringing any copyright owned by VBConversions. VBConversions points to

25 nothing in Blue Switch's Answer or Counterclaims that indicates otherwise.

26       Not only is VBConversions asking the Court to dismiss *Blue Switch's*

27 counterclaims based on *VBConversions'* allegations, it is also asking the Court to

28 accept implausible allegations. If Blue Switch were stealing VBConversions'

1    software, then why would Blue Switch have contacted VBConversions to ask for

2    help in using that software?  Although VBConversions accuses Blue Switch's

3    employees of being "hackers" (Memo. at 6:3), how many hackers contact the

4    software company, reveal their identity, and ask for help in using software that does

5    not function as promised?  The limited facts available suggest that Blue Switch was

6    testing a free version of software to determine whether it would purchase it but

7    encountered numerous problems because the software did not perform as promised.

8         VBConversions has moved to dismiss Blue Switch's claims by asking the

9    Court to assume the truth of VBConversions' nonsensical allegation that Blue

10   Switch stole its software.  That is not the standard on a motion to dismiss.

11              **2.      The Court Should Not Foreclose Blue Switch's Claim for**

12                      **Injunctive Relief at the Outset of This Case.**

13        In its Prayer for Relief, Blue Switch seeks an injunction that would prevent

14   VBConversions "from making misleading and/or untrue statements regarding their

15   software" and then details seven false statements.  In its motion to dismiss,

16   VBConversions asks the Court to foreclose the possibility of any injunctive relief at

17   the pleading stage.  (Memo. at 13:1-15)  One reason is that "[t]he balance of

18   hardships does not favor them [Blue Switch] because they are admitted

19   wrongdoers."  (Memo. at 13:13-14)  As discussed above, there is no such admission.

20        While VBConversions asks the Court to resolve now whether an injunction

21   can be awarded in this case, Blue Switch has not yet filed a motion for a preliminary

22   injunction and the sole issue before the Court is whether Blue Switch's

23   counterclaims sufficiently plead allegations that would make an injunction proper.

24   A review of the pleadings indicates that this is so.

25        The first and second counterclaims of Blue Switch arise under California's

26   False Advertising Law and Unfair Competition Law, which provides for injunctive

27   relief.  (Countercl. ¶¶ 25-42)  The elements of a claim under California's False

28   Advertising Law are:  (1) defendant intended to dispose of a product or perform

618764.1

services; (2) defendant publicly disseminated a false statement regarding the product/service that the defendant knew was false or should have known was false in the exercise of reasonable care; and (3) plaintiff has lost money or property as a result of defendant's conduct. Cal. Bus. & Prof. Code §§ 17500, 17535.   Blue Switch has pled each of these elements. *See* Countercl. ¶ 27 (alleging that VBConversions offered its software to the public); ¶¶ 28-29 (alleging that VBConversions knowingly disseminated false statements regarding the software); ¶¶ 33-34 (alleging that Blue Switch expended $2,100-worth of labor and suffered other financial harm as a result of VBConversions' false advertising).

The elements of a claim under California's Unfair Competition Law are: (1) an unlawful, unfair or fraudulent business act or practice , and (2) plaintiff has lost money or property as a result of defendant's conduct.  Cal. Bus. & Prof. Code §§ 17200, 17204.[4]  Blue Switch has pled each of these elements. *See* Countercl. ¶¶ 37, 40 (alleging that VBConversions:  (i) engaged in fraud by making specific false statements in 2015 via its website; (ii) violated California's False Advertising Law; (iii) engaged in deceit in violation of Cal. Civ. Code § 1710; and (iv) violated the prohibition on "bait advertising" in 16 C.F.R. Part 238));[5] ¶ 41(alleging that Blue

---

[4] The statutory term "competition" is a misnomer, and California's Unfair Competition Law protects against the kind of misconduct alleged here. *See Hewlett v. Squaw Valley Ski Corp.*, 63 Cal. Rptr. 2d 118 (3d Dist. 1997) ("The unfair competition statute is not confined to anticompetitive business practices, but is also directed toward the public's right to protection from fraud, deceit, and unlawful conduct.").

[5] Misconduct that satisfies any of these (fraud, false advertising, statutory deceit or bait advertising) is sufficient to state a claim under California's Unfair Competition Law.  In its motion to dismiss, VBConversions argues that it did not engage in bait advertising because "[t]he software product offered by VBC in a trial version is the same product the user can license."  (Memo. at 15:23-24)  VBConversions' argument misses the point.  "Bait advertising is an alluring but insincere offer to sell a product or service which the advertiser in truth does not intend or want to sell."  18 (footnote continued)

1  Switch expended $2,100-worth of labor and suffered other financial harm as a result
2  of VBConversions' false advertising).

3      Both California's False Advertising Law and Unfair Competition Law
4  provide for injunctive relief. *See* Cal. Bus. & Prof. Code § 17203 ("Any person who
5  engages, has engaged, or proposes to engage in unfair competition may be enjoined
6  in any court of competent jurisdiction."); § 17535 (" Any person, corporation, firm,
7  partnership, joint stock company, or any other association or organization which
8  violates or proposes to violate this chapter may be enjoined by any court of
9  competent jurisdiction."). *See also Barquis v. Merchants Collection Ass'n,* 7 Cal.3d
10  94, 111, (1972) ("[T]he Legislature ... intended by this sweeping language [of
11  Section 17200] to permit tribunals to enjoin on-going wrongful business conduct in
12  whatever context such activity might occur.") (footnote omitted).  Moreover, Blue
13  Switch has alleged that VBConversions' wrongful conduct will not stop unless
14  enjoined.  (Countercl. ¶¶ 33, 42)  VBConversions' subsequent conduct bears this
15  out.  Since persuading Blue Switch to download software based on false
16  representations and that harmed Blue Switch's business, VBConversions has
17  pursued another victim of its fraud. *See VBConversions LLC v. CW Professional*
18  *Services LLC* (16-cv-01435) (C.D. Cal.) (Kronstradt, J.).

19      Consequently, the Court should not dismiss Blue Switch's prayer for
20  injunctive relief.

21
22
23
24
25  C.F.R. Part 238.  Blue Switch has alleged that VBConversions offered software to
   the public that was supposed to—but did not—have key characteristics, such as
26  "[n]o C# compiler errors in converted code."  (Countercl. ¶ 37) This is a bait and
27  switch—offering the public one thing and giving them something inferior, with the
   intent to "obtain leads as to persons" for other purposes (18 C.F.R. Part 238).
28

### 3.   Contrary to VBConversions' Argument, the Copyright Act Does Not Preempt Blue Switch's Claim under California's Unfair Competition Law.

VBConversions argues that: (1) Blue Switch used VBConversions' software on a program called BlueBasis, in which Blue Switch has a copyright, (2) Blue Switch alleges that VBConversions interfered with a prospective economic advantage, and (3) Blue Switch "is alleging that [VBConversions] ha[s] infringed upon its software program, BlueBasis, by interfering with its reproduction, adaptation and distribution rights…."  (Memo. at 16:24-19:7)  VBConversions claims that, as a result, the Copyright Act preempts Blue Switch's claim under the Unfair Competition Law. *Id.*  Again, however, VBConversions is misrepresenting Blue Switch's counterclaims and presenting its speculation as undisputed truth.

Blue Switch's counterclaims do not refer to "BlueBasis" or purport to claim a copyright in anything called "BlueBasis."  Nor does Blue Switch allege that it used VBConversions' software on any program called "BlueBasis" or anything in which it possesses a copyright.  Nor does Blue Switch allege any interference with reproduction, adaptation or distribution rights.  Instead, Blue Switch alleges that: (1) it "relied upon [VBConversions'] material misrepresentations in downloading [VBConversions'] software," and (2) as a result of VBConversions' misconduct, Blue Switch "expended $2,100-worth of labor in working on problems associated with [VBConversions'] software product not functioning as advertised.  [Blue Switch] suffered further financial harm in delays to business projects caused by [VBConversions']" misconduct.  (Countercl. ¶¶ 32)  VBConversions' argument regarding preemption is based on allegations that do not exist in Blue Switch's counterclaims.

Moreover, Blue Switch's claim under the Unfair Competition Law (which VBConversions claims is preempted) is based on fraud, false advertising, statutory deceit and bait advertising.  (Countercl. ¶ 40)  "A number of courts have held that

1  claims that involve the element of misrepresentation or deception—including false
2  advertising—are not equivalent to any exclusive right protected by the Copyright
3  Act, and therefore are not preempted." *Silicon Image, Inc. v. Analogix*
4  *Semiconductor, Inc.*, C-07-0635 JCS, 2007 WL 1455903, at *7 (N.D. Cal. May 16,
5  2007) (citing cases).  The Court in *Silicon Image* concluded that the claim under the
6  Unfair Competition Law "is not preempted to the extent it is based on false
7  advertising."  *Id.  See also CE Resource, Inc. v. Magellan Group, LLC*, 2:08-CV-
8  02999MCEKJM, 2009 WL 2031721, at *10 (E.D. Cal. July 8, 2009) (holding that
9  claim under Unfair Competition Law was not preempted by Copyright Act because
10  claim was based on deceiving consumers).

11      Another reason to reject VBConversions' argument is that its practical
12  consequences are absurd.  VBConversions claims that when it lies about malicious
13  software that harms another, the victim's relief is limited to asserting a claim for
14  copyright infringement.  Not surprisingly, VBConversions cites no relevant
15  precedent.

16      Consequently, the Copyright Act does not preempt Blue Switch's claim under
17  the Unfair Competition Law.

18  **V.    CONCLUSION**

19      VBConversions' motion is based on a straw man; and it is ironic that, in
20  moving to dismiss Blue Switch's counterclaims based on false representations,
21  VBConversions falsely represents those counterclaims.  When applying the proper
22  standard on a motion to dismiss (*i.e.,* accepting as true Blue Switch's material
23  allegations and drawing reasonable inferences in favor of Blue Switch), it is clear
24  that Blue Switch has standing to asserts its counterclaims and that none of them
25  ///
26  ///
27  ///
28  ///

1 | should be dismissed for failure to state a claim.  Consequently, the Court should

2 | deny VBConversions' motion.

3 |

4 | Dated:  March 28, 2016                    BROWNE GEORGE ROSS LLP
                                             Eric M. George
5 |                                          Jonathan L. Gottfried

6 |                                          By _____ /s/  Jonathan Gottfried _____

7 |                                          Attorneys for Defendant/Counterclaimant
                                             Blue Switch.com Inc. and Defendants
8 |                                          Mark Nakach and Joe Shomer

9 |

10 |

11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and not a party to this action.  I am employed in the County of Los Angeles, State of California.  My business address is 2121 Avenue of the Stars, Suite 2400, Los Angeles, CA 90067.

On March 28, 2016, I served true copies of the following document(s) described as **OPPOSITION OF COUNTERCLAIMANT BLUE SWITCH.COM INC. TO COUNTER-DEFENDANTS VBCONVERSIONS LLC'S AND DAVID A. CROOK'S MOTION TO DISMISS** on the interested parties in this action as follows:

Donald M. Gindy, Esq.                    Attorneys for Plaintiff
LAW OFFICES OF DONALD M.                 VBConversions LLC
GINDY
1925 Century Park East, Suite 650
Los Angeles, California 90067
Tel:  424.284.3123
Email:  don@gindylaw.com

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system.  Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on March 28, 2016, at Los Angeles, California.


/s/ Jacqueline E. Baker
Jacqueline E. Baker

618764.1

OPPOSITION OF BLUE SWITCH.COM INC. TO MOTION TO DISMISS